## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| PAUL DINDA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:17-cv-03171-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| CSC GOVERNMENT SOLUTIONS | ) | |
| LLC and CSRA LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on United States Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 44, that the court grant CSC Government Solutions, LLC ("CSC"), and CSRA LLC's ("CRSA") (together, "defendants") motion for summary judgment, ECF No. 35. For the reasons set forth below, the court adopts the R&R and grants defendants' motion for summary judgment.

## I. BACKGROUND

The facts of this case are set forth fully in the R&R, and as such, the court refrains from a lengthy recitation here. In summary, this case arises out of plaintiff Paul Dinda's ("Dinda") employment with CSC. Dinda was hired by CSC as a Software Engineer Senior Professional in March 2012. ECF No. 35-4, Dinda Dep. 34:25. At the time he began his employment, Dinda was fifty-six years old and had previously been diagnosed by the Department of Veterans Affairs ("VA") with keratoconus, a vision disorder. ECF No. 39-3, EEOC at 8. Sometime after beginning work at CSC, the government team merged with SRA International and formed CRSA, making Dinda an employee of CRSA.

ECF No. 23 ¶ 14, ECF No. 35 at 4.  In his position at CRSA, Dinda consistently worked

on contracts with the VA.  ECF No. 35-4, Dinda Dep. 38:24–39:1.

Eventually, in December 2015, CRSA entered into a subcontract with

Technatomy Corporation ("Technatomy").  Under this agreement, Technatomy reserved

the right to approve or deny the assignment of any CSRA employees to the project.  ECF

No. 35-2, Ward Dep. Ex. 5.  Dinda worked on this project, under the supervision of Lisa

Ward ("Ward") starting in January 2016.  Id. 66:1–6.  The team serving under Ward

involved various other individuals, including Megan Kotos ("Kotos"), Technatomy

Senior Test Lead; Jennifer Givens ("Givens"), CSRA Automation Test Lead; Deborah

Gillespie, CSRA Tester and plaintiff's principal subordinate; and Eliberto Marquez, VA

Project Manager.  ECF No. 35-3, Kotos Dep. 13:1; ECF No. 35-2, Ward Dep. 48:10–11;

ECF No. 35-4, Dinda Dep. 50:6–8.

For this project, Dinda reported to Kotos, primarily communicating with her via

electronic means, as he worked remotely.  ECF No. 35-3, Kotos Dep. 111:8-16.  Dinda

claims that he and Kotos did not always get along and that he voiced his concerns to his

supervisor about their working relationship.  ECF No. 35-4, Dinda Dep. 92:2-4.  Kotos

also regarded much of her communication from Dinda as disrespectful and antagonistic,

which resulted in her making several complaints about Dinda to his supervisor, Ward.

ECF No. 35-3, Kotos Dep. Ex. 18.  These complaints varied in specifics, but primarily

related to Dinda's failure to attend meetings and his lack of open communication.  Issues

prevailed between Dinda and his employer, particularly as more complaints about his

performance were reported by CRSA's client, Technatomy, in the following months.

ECF No. 35-2, Ward Dep. 56:19–23.  As a result of these complaints, Ward met with

Dinda at least twice between January 2016 and June 2016 to discuss his workplace behavior and attitude. ECF No. 35-2, Ward Dep. 51:16–53:1. The first of these sessions occurred on an unspecified date in February 2016, Id. 52:6-9, and the second conversation occurred on March 16, 2016, id. 30:13-24. During these meetings, Dinda specifically agreed to work on improving his relationship with Kotos. ECF No. 35-4, Dinda Dep. 148:16–23.

In April 2016, Dinda complained to Ward of Kotos' treatment. Upon reviewing emails between Dinda and Kotos, Ward concluded that Kotos' attitude was a byproduct of Dinda's insubordination and disrespect. ECF No. 35-2, Ward Dep. 52:12–17. In May 2016, Technatomy formally requested that Dinda be removed from their project, citing his resistance to and failure to meet their requests. Id. 56:22. These issues culminated in Dinda's suspension from CSRA in May 2016, pending the outcome of an employee relations investigation. Upon the conclusion of this investigation, Dinda was terminated from his position with CSRA on June 22, 2016. ECF No. 39-9, Letters at 2.

On July 12, 2016, Dinda filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). ECF No. 39-3, EEOC at 1. The EEOC replied in August 2017, dismissing Dinda's charge and issuing a notice of right to sue. ECF No. 7-3, EEOC Dismissal. The instant case was then filed on November 21, 2017. ECF No. 1. Dinda amended his complaint on February 21, 2018, bringing the following claims: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"); (2) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (3) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (4) hostile work environment based on

Dinda's disability, sex and age; and (5) retaliation in violation of the ADA, Title VII, and the ADEA.[1]  ECF No. 23.  On December 21, 2018, defendants filed a motion for summary judgment, ECF No. 35, to which Dinda responded on January 20, 2019, ECF No. 39.  On March 21, 2019, Magistrate Judge Mary Gordon Baker filed a Report and Recommendation ("R&R") recommending that the court grant the motion for summary judgment on each of Dinda's claims.  ECF No. 43.  On April 2, 2019, Dinda filed his objections to the R&R, ECF No. 45, and on April 16, 2019, defendants filed their response, ECF No. 46.

## II. STANDARDS OF REVIEW

### A. Report and Recommendation

The magistrate judge makes only a recommendation to the court.  Mathews v. Weber, 423 U.S. 261, 270 (1976).  The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court.  Id. at 270-71.  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).  The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made.  Id.  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  In the absence of a specific objection, the court reviews the R&R only for clear

---

[1] Dinda combined his sex discrimination and age discrimination claims under one cause of action, but for clarity the court addresses each claim separately.

4

error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

### B. Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

## III. DISCUSSION

Dinda's objections to the R&R are disorganized, confusing, and incoherent at times[2] but seem to claim that the R&R improperly viewed the facts in the light most favorable to defendants, not to Dinda. The court has difficulty determining exactly which facts Dinda takes issue with and in relation to which claim. Dinda enumerates several "facts" without any context to inform the court whether these are facts from the R&R to which Dinda objects or whether they are the facts that Dinda now wishes this court to accept as true. ECF No. 45 at 7–9. Dinda then enumerates several "direct fact differences" but again fails to explain the impact each of these fact differences would have on the R&R's conclusions. Id. at 9–11. Rather, Dinda summarily concludes that "[t]he facts as presented by the Defendant fail to meet the elements of the law" and that "[i]t is clear from the Plaintiff's statement of facts there is a genuine issue of material fact to all of the issues as presented by the Defendant." Id. at 12.

The court reviews the R&R's recommendations and Dinda's objections as to each claim and grants summary judgment on each of them.

### A. Disability Discrimination

In his objections to the R&R, Dinda maintains that the magistrate judge erred in granting summary judgment to defendants on his disability discrimination claim. ECF No. 45 at 15. Dinda claims that his employer discriminated against him due to his disability status. ECF No. 23. Dinda suffers from a condition called keratoconus, which

---

[2] For example, in addition to the lack of specificity required in objections to R&R's, there are numerous instances of incomplete sentences, not to mention incoherent phrasing, throughout Dinda's objections. The court would advise plaintiff's attorney to proofread and edit her submissions to the court before filing them in the future.

impairs his vision.  He received this diagnosis from the VA, where he also received treatment for the condition.  Documentation from his VA doctor indicates that, when wearing contact lenses, Dinda's vision is 20/20 in each eye.  EFC No. 39-7, Disability Decision.  Due to this condition, Dinda sought a reasonable accommodation from his employer.  EFC No. 35-4, Dinda Dep. 78:13.  At the start of his employment, Dinda received an accommodation to observe online-presentations over his personal computer, as opposed to viewing them on a projector screen.  Id. 38:12-15.  Under previous managers, this arrangement worked without issue; however, under the supervision of Ward, there existed some discrepancies over whether Dinda's attendance was properly noted at meetings he claims he attended.  ECF No. 35-4, Dinda Dep. 98:2-7.

Dinda claims that he was treated improperly due to his disability, particularly under the supervision of his latest manager, Ward.  To establish a claim for disability discrimination under the ADA, Dinda must satisfy the following four elements: (1) he must establish that he is a qualified individual with a disability under the ADA; (2) he must demonstrate that he was performing his job at a level that met his employer's legitimate expectations; (3) he must establish that his employer took adverse employment action against him; and (4) he must demonstrate that the alleged adverse employment action occurred under circumstances that raise a reasonable inference of unlawful discrimination.  Haulbrook v. Michelin North America, 252 F.3d 696, 702 (4th Cir. 2001).  The court analyzes the first two elements and finds that Dinda has failed to put forth evidence from which a jury could find that he has satisfied these prongs.

For the first element, the court must consider whether or not Dinda suffered from a disability protected by the ADA.  The term "disability" as defined by the ADA

encompasses many impairments, both physical and mental. 42 U.S.C. § 12102. An impairment is a disability if it "substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). To qualify as a protected disability, the impairment in question must substantially limit one or more of the individual's major life activities, which includes working. See, e.g., Rohan v. Networks Presentations LLC, 375 F.3d 266, 276 (4th Cir. 2004) (finding that the disability must be "sufficiently severe" to limit substantially the major life activity). Notably, the condition need not substantially limit more than one, or each, of one's major life activities. 42 U.S.C. § 12102(2)(A). The definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by [its] terms." 42 U.S.C. § 12102(4)(A). With regard to workplace discrimination, the individual filing suit must also demonstrate that her employer considered her disabled. Haulbrook, 252 F.3d at 703. Furthermore, though the court ought to employ a broad interpretation of disability, the court is also tasked with considering factors that may mitigate the impacts of the disability in question. 42 U.S.C. § 12102(4)(E)(i)-(ii). These factors must be considered when the court determines whether or not someone is "substantially limited." Courts have found that individuals do not qualify as disabled under the ADA if contact lenses or glasses adequately mitigate the effects of their vision impairment, thus, ensuring that they are not substantially limited in the performance of major life activities. See, e.g., Goodman v. Johnson, 2011 WL 13092908, at * 3 (E.D. Va. 2011) (finding that disability claims do not stand under the ADA when vision problems are mitigated by glasses); Fulp v. Columbiana Hi Tech LLC, 2018 WL 1027159, at *7 (M.D.N.C. 2018) (finding that, even when the ameliorative effects of glasses are not recognized by the plaintiff, the

8

plaintiff still does not qualify as disabled under the ADA). If one does not qualify as a "protected class" under the ADA, then they are unable to pursue an ADA disability discrimination claim. Haulbrook, 252 F.3d at 702.

In Person v. Wal-Mart Stores Inc, the Fourth Circuit considered whether keratoconus ought to be considered an ADA protected disability. 65 F.Supp.2d 361, 362 (E.D.N.C. 1999). In Person, an employee brought a civil action against her employer, maintaining that she suffered from discrimination with respect to her disability. Id. The court ruled that the vision impairments that the plaintiff suffered from, including vision-related fatigue and eye irritation, did not impose substantial restrictions on her ability to perform work-related tasks. Id. 364. The court maintained that even if a condition somewhat impairs an employee, the impairment only qualifies as protected under the ADA if the employee can adequately prove that the impairment significantly limits their ability to work. Id. Therefore, the court concluded that keratoconus that only imposes minor limitations on one's ability to work does not qualify as a protected disability under the ADA. Id.; see also Pezzullo v. Webster Bank, 2008 WL 4307111, at *4 (D. Conn. 2008) (finding that a plaintiff was not protected under the ADA, since she attested to being capable of performing her normal work duties); Matthews v. Village Center Community Development Dist., 2006 WL 3422416, at *10 (M.D. Fla. 2006) (finding that the plaintiff must demonstrate they remain substantially limited in their ability to perform major life activities, even after receiving treatment to limit symptoms); Jamison v. Dow Chemical Co., 354 F.Supp.2d 715, 721 (E.D. Mich. 2004) (finding that ADA protections only apply in situations where the plaintiff is actually impaired, whereas they do not apply if the situation does not actually impair the plaintiff); Phillips v. DaimlerChrysler

<u>Corp.</u>, 2003 WL 22939481, 4 (D. Del. 2003*) (*finding that one does not qualify as a protected class under the ADA if they can perform major life activities, such as attending class, caring for oneself or working various job).

In the instant case, it has been established that Dinda suffers from keratoconus. Dinda complains of difficulty seeing without corrective lenses, ECF No. 35-4, Dinda Dep. 103:18, as well as vision-related fatigue, <u>id.</u> 106:9. Yet there is no dispute that glasses or contact lenses adequately mitigate the effects of the Dinda's vision condition. According to Dinda's VA Disability Diagnosis, his vision measures 20/20, or perfect, for both the right and left eye when he wears contact lenses. ECF No. 39-7, Disability Decision at 3. Therefore, like the plaintiff in <u>Person</u>, Dinda is not continuously suffering the symptoms of his keratoconus. Keratoconus is only a protected condition when the employee demonstrates that it substantially limits his or her ability to perform workplace duties. In the instant case, Dinda failed to provide evidence that his keratoconus significantly limited his ability to complete work-related tasks. Therefore, the R&R did not err in its interpretation that Dinda does not qualify as disabled under the ADA.

The second prong of a disability discrimination claim requires that Dinda prove that he was performing his job at a level that met the legitimate expectations of his employer. In making this determination, the court must address whether or not the employer's expectations were legitimate, and whether or not Dinda was satisfying those legitimate expectations. <u>Haulbrook</u>, 252 F.3d at 702. First, the term "legitimate" means that the expectations set forth by the employer cannot exist merely to mask discriminatory behavior. The expectations utilized by the employer and the decision-maker must clearly be established with a purpose other than acting as a veil to cover

discriminatory behavior. <u>King v. Rumsfeld</u>, 328 F.3d 145, 150 (4th Cir. 2003). The Fourth Circuit has maintained that a claims must demonstrate that the expectations of an employer were illegitimate at the time of the alleged discrimination. <u>King</u>, 328 F.3d at 149; <u>see also</u> <u>Martin v. v. Scott & Stringfellow</u>, Inc., 643 F.Supp.2d 770, 785 (E.D. Va. 2009) (finding that the plaintiff must provide evidence of his or her employer's perception of their satisfactory work).

To satisfy the second element of a disability discrimination claim, the employee must explicitly demonstrate that he was meeting the legitimate expectations of his employer at the time of the adverse employment action. The Fourth Circuit has made it clear that the self-assessment of the employee and the assessments of his coworkers are irrelevant to the analysis. <u>King</u>, 328 F.3d at 149. The court must analyze the work performance from the viewpoint of the decision-maker in determining whether the employee was satisfying the legitimate expectations of his employer at the time of the adverse employment action. <u>Id.</u> In <u>King</u>, the court found that self-assessments by the plaintiff, or reports from his or her co-workers, are not adequate documents from which the court could determine if an employee is satisfying the legitimate expectations of an employer. This notion has been upheld in various forms of discrimination cases. <u>See</u> <u>Stevens v. Del Webb Communities Inc.</u>, 456 F. Supp. 2d 698, 729 (D.S.C. 2006) (finding that an employee's own testimony of satisfactory job performance was not considered sufficient to establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case). Furthermore, the decision maker must be presiding over the employee at the time of the adverse employment action, and the

accounts of individuals who were former decision makers are not relevant. <u>Kiesner v. Starbucks Corp.,</u> 2013 WL 3479275, at *5 (D.S.C. 2013).

In this case, Dinda fails to satisfy this element, as he does not present evidence that illustrates he was meeting the legitimate expectations of his employer at the time of his suspension or termination. The court has assessed the expectations set forth by CRSA and finds that they were legitimate and lacked any discriminatory foundation. Dinda's employer expected him to perform the duties required by his job in a professional, timely fashion. He was expected, as a team member, to communicate effectively with both clients and coworkers. These expectations are commonplace in professional office settings. Yet Dinda failed to provide evidence that he was meeting the standards of these legitimate expectations at the time of adverse employment action. He only provided positive performance reviews from former supervisors, as well as positive feedback from some of his clients. ECF No. 39-6, Emails. However, Dinda failed to provide positive performance reviews from his supervisor at the time of his termination.

On the contrary, Dinda was made aware that his work was not satisfactory in the eyes of his employer during two counseling sessions with his supervisor, months prior to any adverse employment action. ECF No. 35-5, Ward Declaration 30:19. These were verbal counseling sessions, the first of which happened on an unspecified date in February 2016, and the second of which was on March 16, 2016. ECF No. 35-2, Ward Dep. 51:15. Though his supervisor conceded that the VA appreciated the work completed by Dinda, Ward maintained that Kotos, an important client, was displeased by Dinda's attitude and behavior. ECF No. 35-5, Ward Declaration 31: 2. The Fourth Circuit has maintained that failure to meet the expectations of a client is a failure to meet

the legitimate expectations of one's own employer.  Marchmon v. Securitas Sec. Servs., 994 F. Supp. 2d 742, 748 (W.D.N.C. 2014).  Because Dinda was required to provide deliverables to Kotos, she was considered a client.  Thus, his failure to meet her expectations indicates that he was failing to meet the expectations of his own employer.

### B.  Age Discrimination

Dinda also brought a claim against defendants for age discrimination.  Under the Age Discrimination in Employment Act ("ADEA"), it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1).  To establish a claim of age discrimination, the plaintiff must demonstrate that: "(1) at the time of her firing, she was at least 40 years of age; (2) she was qualified for the job and performing in accordance with her employer's legitimate expectations; (3) her employer nonetheless discharged her; and (4) a substantially younger individual with comparable qualifications replaced her."  Westmoreland v. TWC Administration LLC, 924 F.3d 718, 725 (4th Cir. 2019).  The R&R found that Dinda failed to satisfy all four prongs of this claim, and this court agrees.

Dinda makes very few coherent arguments in regards to the R&R's conclusions on his age discrimination claims.  First, Dinda argues that "[t]he expectations of the employer were being met the Defendant created issues in order to procure the Plaintiff's termination in violation of the law because of his sex, disability, age and in retaliation for his complaints regarding harassment and discrimination."  ECF No. 45 at 13.  However, as addressed immediately above, the court finds that Dinda failed to put forth any

evidence of the type that courts may rely upon to determine whether he was meeting the legitimate expectations of his employer.

Dinda also claims that he has "shown that the Defendant's reasons for his suspension and termination were pretextual." ECF No. 45 at 16. Yet Dinda fails to make any arguments as to why they were pretextual. Instead, Dinda merely states that "[t]he Court only sites [sic] to the Defendant's record with no consideration for the Plaintiff's facts as presented. As set forth the Plaintiff has presented a genuine issue of material fact as to the but-for standard." ECF NO. 45 at 16. Despite reiterating that he has presented a genuine issue of material fact, Dinda's objections fail to fully identify what "facts as presented" would support his age discrimination claim. Nonetheless, the court addresses the pretext issue.

To successfully rebut an age discrimination case, the defendants must illustrate that there were non-pretextual reasons that the employee was suspended or terminated. Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 509–10 (4th Cir. 1994). When defendants are able to articulate non-pretextual reasons for the adverse employment action, a plaintiff's claim cannot continue. The Fourth Circuit has found that evidence of numerous performance deficiencies indicates that there were non-pretextual reasons for the termination. Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991). In Proud, the Fourth Circuit held that an employee's inference that they are being discriminated against on the basis of age does not constitute pretext. Id. at 798. When a plaintiff's claim of pretextual termination is not supported by sufficient evidence, the court may find that the plaintiff has failed to raise a genuine issue of material fact. Mereish v. Walker, 359 F.3d 330, 339 (4th Cir. 2004). A plaintiff fails to establish pretext when she fails to demonstrate that the

adverse action was applied specifically to an individual member of a class, rather than on a neutral basis.  Id.

During his deposition, Dinda was asked whether anyone ever made age-related remarks to him that he felt were inappropriate or negative.  ECF No. 43-2, Dinda Dep. 128:20–23.  Dinda replied that "[i]t's only hearsay" and then explained that

> Hearsay was essentially this.  I asked Deborah Givans to do something for me, and it related to automation, and it related to interaction between her, Megan Kotos and Jen Givans.  And Deborah relayed to me that she was told by them, plural, that I – she ought not allow me to, what, constrain her to be my, what was the word, my secretary.

Id. 128:24–129:8.  When questioned about how this remark was related to his age, Dinda said, "[y]ea, okay. Related to age but more related to team lead versus system test engineer subordinate."  Id. at 129:9–14.   This deposition excerpt is reflective of the rest of Dinda's allegations of age discrimination—a non-specific narrative he tells about his work-related interactions with Givens and Kotos.  ECF No. 35-4, Dinda Dep. 128: 15–130:129.  His account is vague and does not pertain to the behavior of the decision-maker in his case, Ward.  Id.  Therefore, Dinda has failed to demonstrate that the decision-maker in his case took adverse employment action against him that was related to his age and that his allegedly poor performance was merely a pretext for a discriminatory firing.

Based on the foregoing, the court finds that Dinda has failed to put forth evidence that could support his age discrimination claim.  Therefore, this court adopts the recommendation of the R&R and grants summary judgment on this claim.

## C.  Sex Discrimination

Dinda also brings a sex discrimination claim against defendants.  Title VII of the 1964 Civil Rights Act makes it unlawful for an employer to discriminate against an

employee on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). As with the previous discrimination claims, there are four prongs that Dinda must satisfy to successfully allege sex discrimination in this case: (1) he must adequately satisfy that he is a member of a "protected class"; (2) that he was performing his job at a level that met the legitimate expectations of his employer; (3) that his employer took adverse employment action against him; and (4) that similarly-situated employees outside of the protected class were treated more favorably than he by his employer. Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

Dinda objects to the R&R's finding that summary judgment ought to be granted to defendants on the sex discrimination claim. He maintains that he demonstrated that he was meeting the expectations of his employer and that the facts pertaining to this claim were improperly viewed in a light most favorable to the defendants. Specifically, he argues that the facts, viewed in a light most favorable to himself, demonstrate that he was meeting the legitimate expectations of Ward, and he claims that the evidence presented indicates this through means other than mere self-assessments. However, Dinda has failed to refer to any specific facts to support these generic arguments. As discussed above in Section III.A, the court has already determined that Dinda failed to meet the legitimate expectations of his employer.

Dinda's also objects that "[t]he court than [sic] summarily sides with the Defendant as to similarly situated individuals." ECF No. 45 at 15. According to Dinda "[t]here females that were supervised by Ms. Ward and Ms. Kotos who supervised the plaintiff and ultimately were responsible for the Plaintiff's termination from employment

were not treated as unfavorably as the Plaintiff." Id. Furthermore, Dinda argues that he "was replaced by a female after he was terminated." Id.

In order to establish that similarly-situated employees were treated more favorably, a plaintiff must have some indication of sex discrimination, other than his or her own mere speculation. Mackey v. Shalala, 360 F.3d 463, 469–70 (4th Cir. 2004). To qualify as a similarly-situated comparator employee, the employee must have the same supervisor, must have been subject to the same standards and must have engaged in the same conduct as the plaintiff. Haywood v. Locke, 387 Fed.Appx. 355, 359 (4th Cir. 2010). The comparator should have the same responsibilities as the plaintiff, in order to satisfy the role of a comparator. Sherman v. Westinghouse Savannah River Co., 263 Fed.Appx. 357, 367 (4th Cir. 2008).

In this case, Dinda alleges that Givens was treated more favorably than he was by Ward. ECF No. 35-4, Dinda Dep. 83:21. He contends that Givens was generally treated in a more professional manner than he was. Id. 84:2. Yet Givens was a CSRA Automation Test Lead, a position different from that of Dinda. ECF No. 35-3, Kotos Dep. 25:6. Due to the differences in her position, she does not qualify as a comparator in this case. Furthermore, Dinda could not point to any specific instances of Givens receiving preferential treatment, but referred generally to "the nature" of Ward's interaction with Givens—"[m]ore professional, arm balance, whereas that I perceived that was not the case with me, in particular regard to, not that I had necessarily an expectation of favorable treatment, but at least a modicum of respect." Dinda Dep. 84:1–6. He also stated that Kotos and Teresa Cassidy were treated more favorably than him, but does not specify how. Id. 84:6–10. Furthermore, Dinda could not say whether any of

these named individuals had taken the same actions at work as him that had led to his negative performance reviews and suspension; thus, he could not claim that women at work who engaged in the same conduct as him were treated more favorably. Id. 86:6–87:12.

Based on the foregoing, the court finds that Dinda has failed to present sufficient evidence from which a jury could find in favor of his sex discrimination claim. Therefore, the court grants defendants' motion for summary judgement on this claim.

**D. Hostile Work Environment**

In response to the R&R's recommendation that the court grant defendants' motion for summary judgment on Dinda's hostile work environment claim, Dinda presents the following objections:

> The Plaintiff has presented a genuine issue of material fact regarding Hostile Work Environment. The actual facts when presented in a light most favorable to the Plaintiff show that the Plaintiff has shown that the Court is in error in their rendition of the facts and the case. The claims is [sic] not based on work place politics but actual discrimination and creating a hostile work environment for a protected individual. The conduct of the Ward and Kotos was extensive including daily activities as set forth in the actual facts of the Plaintiff's respond in opposition to Defendant's motion. The Plaintiff's contentions that the work environment was hostile just by the contract from January of 2016 was supported by Ms. Gillespie. The work environment from Kotos was daily and allowed to be permitted even more so after Ward was aware of the plaintiff's harassment complaint. The actions of Ward and Kotos almost made it impossible for the Plaintiff to perform any of the aspects of his position.

ECF No. 45 at 16. Yet again, Dinda fails to refer to specific instances of Ward and Kotos' conduct that created a hostile work environment. Merely directing the court to view "the actual facts of the Plaintiff's respon[se]" to the motion for summary judgment is insufficient. The court will not comb through prior filings in an attempt to ascertain which of a long litany of facts are supposed to apply to this particular issue. It is the job

of the party objecting to the R&R—and not the court—to put forth specific objections. "In the absence of a specific objection, the court reviews the R&R only for clear error." Diamond, 416 F.3d at 315. The court has reviewed the R&R's analysis on the hostile work environment claim and finds that it was not clear error.

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult, [ ] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, [ ] Title VII is violated." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotes omitted). A hostile work environment exists "when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment." Harris v. Forklift Systems, Inc., 114 S.Ct. 367, 368 (1993). A reasonable person must consider that the environment constituted hostile working conditions. Fudge v. Sentinel Office Payroll Corp., 2015 WL 5682639, at *9 (D.S.C. 2015). To successfully allege a claim as such, there are four elements that a plaintiff must satisfy: "(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Conner v. Schrader-Bridgeport Intern., Inc., 227 F.3d 179, 192 (4th Cir. 2000). Specifically for the second prong, the plaintiff must establish that unwelcome workplace conduct was a direct result of his sex, age, or disability. Pueschel v. Peters, 577 F.3d 558, 565 (4th Cir. 2009).

In this case, the court must determine whether the treatment Dinda alleges was "but for" his disability, gender, or age. The behavior that he alleges does not satisfy this

standard, as it is not clear that any of the unwelcome conduct, which he describes as "general dismissiveness" was directly related to his membership in these identifying factors. ECF No. 35-4, Dinda Dep. 133:8. However unwelcome, he does not demonstrate that this conduct would have been different or would not have occurred were he a different gender, different age, or did not suffer from keratoconus.

**E. Retaliation Claim**

Finally, Dinda brought a claim for retaliation. Title VII, the ADA and the ADEA all make it unlawful for an employer to retaliate against an employee because that individual opposed any practice made unlawful under the respective statute, or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under the respective statute. 42 U.S.C. § 2000e–3(a) (Title VII); 42 U.S.C. § 12203 (ADA); 29 U.S.C. § 623(d) (ADEA). The R&R recommended that the court grant summary judgment on this claim. Dinda's objections to the R&R's conclusions on his retaliation claim are that

> The Court has set forth extensive errors of law regarding the Plaintiff's claims including but not limited to Retaliation. The Court correctly sets forth that there is a genuine issue of material facts [sic] but incorrectly concludes that the Plaintiff has present [sic] a legitimate nondiscriminatory reason for suspending and terminating the Plaintiff. The Court and the Defendant hinge every argument on this contention which is in error. The Plaintiff's claims obviously have genuine issues of material fact as actually stated by the Court.

ECF No. 45 at 15. As with the hostile work environment claim, Dinda's objections for the retaliation claim are woefully deficient of specific arguments or factual support. The court has reviewed the R&R's analysis and finds there to be no clear error. Thus, the court grants summary judgment on this claim.

<u>**IV. CONCLUSION**</u>

For the reasons set forth above, the court **ADOPTS** the R&R and **GRANTS**

defendants' motion for summary judgment.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 19, 2019**
**Charleston, South Carolina**